# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DEQUITA BURKS, Personal Representative
of the Estate of RODRIGUEZ BURKS, Deceased,

        Plaintiff,                Case No:
                                            Hon:

vs.

WARDEN CATHERINE S. BAUMAN;       **COMPLAINT**
DEPUTY WARDEN ROBERT WICKSTROM;   **AND JURY DEMAND**
PRISON ADMINISTRATOR DEAN POTILLA;
CORRECTIONS OFFICER LEWIS EISEMAN;
CORRECTIONS OFFICER DONALD PEER;
CORRECTIONS OFFICER GREGORY EXELBY;
PRISON COUNSELOR KAREN PRUNICK;
SGT. GERALD MONTICELLO; CORRECTIONS
OFFICER TEDD CHRISTOFF; SUPERVISOR
THOMAS SALO; CORRECTIONS OFFICER
DALE KURTH; CORRECTIONS SGT. JOHN;
SGT. ZACHARY SORELLE; CORRECTIONS OFFICER
BLOUGH; CORRECTIONS OFFICER TERRY KLENITZ;
CORRECTIONS OFFICER CHARLES STRICKLAND;
CORRECTIONS OFFICER KULIK; CORRECTIONS
OFFICER PERRY; SGT. CORY; CORRECTIONS
OFFICER ORDIWAY and CORRECTIONS
OFFICER HEATHER BECKWITH,
Jointly and Severally, Individually and in their Official Capacities

        Defendants.

_____

GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
*FIEGER LAW*
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075
(248) 355-5555
g.puzzuoli@fiegerlaw.com

_____

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, DEQUITA BURKS, Personal Representative of the Estate of RODRIGUEZ BURKS, Deceased, by and through her attorneys, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., and in support of this Complaint states as follows:

## PARTIES AND JURISDICTION

1.     DEQUITA BURKS (hereinafter "Plaintiff") at all times was and is a citizen of the State of Michigan and a resident of this judicial district.

2.     Plaintiff has been duly appointed Personal Representative of the Estate of RODRIGUEZ BURKS, decedent.

3.     Plaintiff is the mother of decedent RODRIGUEZ BURKS, an African American male, who was incarcerated in the Alger Correctional Facility in Pine Housing Unit, C Block, cell number 143.

4.     The incident giving rise to this incident occurred in the Alger Correctional Facility located an N6141 Industrial Park Drive, Pine Housing Unit, C Block, cell number 143.

5.     At the time of the incident herein complained of Defendant CATHERINE S. BAUMAN (hereinafter "Bauman") was employed as Warden of the Alger Correctional Facility and as Warden direction facility operations at the Alger Correctional Facility.

6.     At the time of the incident herein complained of Defendant ROBERT

WICKSTROM (hereinafter "Wickstrom") was employed as the Deputy Warden of the Alger Correctional Facility and as the Deputy Warden, directing facility operations at the Alger Correctional Facility.

7.     At the time of the incident herein complained of Defendant DEAN POTILLA (hereinafter "Potilla") was the Prison Administrator at the Alger Correctional Facility.

8.     At the time of the incident herein complained of Defendant LEWIS EISEMAN (hereinafter "Eiseman") was a Corrections Officer working in Unit C at Alger Correctional Facility.

9.     At the time of the incident herein complained of Defendant DONALD PEER (hereinafter "Peer") was a Corrections Officer working in Unit C at Alger Correctional Facility.

10.     At the time of the incident herein complained of Defendant GREGORY EXELBY (hereinafter "Exelby") was a Corrections Officer working in Unit C at Alger Correctional Facility.

11.     At the time of the incident herein complained of Defendant KAREN PRUNICK (hereinafter "PRUNICK") was the Counselor working in Unit C at Alger Correctional Facility.

12.     At the time of the incident herein complained of Defendant SGT. GERALD MONTICELLO (hereinafter "MONTICELLO") was a Sergeant working in Unit C at Alger Correctional Facility and as a Prison Sergeant,

directing facility operations for the Alger Correctional Facility.

13.    At the time of the incident herein complained of Defendant TEDD CHRISTOFF (hereinafter "Christoff") was a Corrections Officer working in Unit C at Alger Correctional Facility.

14.    At the time of the incident herein complained of Defendant THOMAS SALO (hereinafter "Salo") was a Supervisor Corrections at Alger Correctional Facility and as such directing facility operations at Alger Correctional Facility.

15.    At the time of the incident herein complained of Defendant DALE KURTH (hereinafter "Kurth") was a Corrections Officer working in Unit C at Alger Correctional Facility.

16.    At the time of the incident herein complained of Defendant SGT. JOHN (hereinafter "JOHN") was a Sergeant working in Unit C at Alger Correctional Facility and as a Prison Sergeant, directing facility operations for the Alger Correctional Facility.

17.    At the time of the incident herein complained of Defendant ZACHARY SORELLE (hereinafter "Sorelle") was a Prison Sergeant working in Unit C at Alger Correctional Facility and as such directing facility operations at Alger Correctional Facility.

18.    At the time of the incident herein complained of Defendant BLOUGH (hereinafter "Blough") was a Corrections Officer working in Unit C at Alger Correctional Facility.

19.    At the time of the incident herein complained of Defendant TERRY KLENITZ (hereinafter "Klenitz") was a Lieutenant working in the Control Center at Alger Correctional Facility and as such supervising and directing facility operations at Alger Correctional Facility.

20.    At the time of the incident herein complained of Defendant CHARLES STRICKLAND (hereinafter "Strickland") was a Corrections Officer working in Unit C at Alger Correctional Facility.

21.    At the time of the incident herein complained of Defendant KULIK (hereinafter "Kulik") was a Corrections Officer working in Unit C at Alger Correctional Facility.

22.    At the time of the incident herein complained of Defendant PERRY (hereinafter "Perry") was a Corrections Officer working in Unit C at Alger Correctional Facility.

23.    At the time of the incident herein complained of Defendant CORY (hereinafter "Cory") was a Sergeant working in Unit C at Alger Correctional Facility and as such directing facility operations at Alger Correctional Facility.

24.    At the time of the incident herein complained of Defendant ORDIWAY (hereinafter "Ordiway") was a Corrections Officer working in Unit C at Alger Correctional Facility.

25.    At the time of the incident herein complained of Defendant HEATHER BECKWITH (hereinafter "BECKWITH") was a Corrections Officer

working in Unit C at Alger Correctional Facility.

26.     That upon information and belief all of the individual Defendants reside in counties within the boundaries of the Western District of Michigan.

27.     This action is brought pursuant to the Constitution of the United States and 42 U.S.C. § 1981, 1983 and 1985 and this Court has jurisdiction over Plaintiff's claim under 28 U.S.C. § 1331.

28.     That venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391.

29.     That Plaintiff brings this suit against each and every Defendant in both their individual and official capacities.

30.     That each and every act of Defendants, as set forth herein, were done by those Defendants under the color and pretense of the statutes, ordinances, regulations, laws, customs, and usages of the State of Michigan, and by virtue of, and under the authority of, each individual Defendant's employment with the State of Michigan.

31.     That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) exclusive of costs, interest and attorney fees.

## FACTUAL ALLEGATIONS

32.     Plaintiff hereby restates, re-alleges, and incorporates each and every allegation contained in paragraphs above as though fully set forth herein.

33.     The decedent, Rodriguez Burks, a 23 year old, was incarcerated in the Alger Correctional Facility on December 2, 2016 as a result of a plea to felony offenses of fleeing a police officer in the third degree and receiving and concealing stolen property.

34.     That the decedent, Rodriguez Burks, upon entry to the Alger Correctional Facility, was classified as a security level of IV.

35.     During the decedent RODRIGUEZ BURKS incarceration it became known to each and every one of the Defendants and the inmates that decedent RODRIGUEZ BURKS was a homosexual.

36.     While decedent was incarcerated at Alger Correctional Facility, an inmate by the name of DeShawn Madden (hereinafter referred to as "Madden", convicted of carjacking; assault with intent to commit murder and armed robbery, who was classified as a security level V, was transferred from the Marquette Correctional Facility to Alger Correctional Facility as an "emergency ride."   An "emergency ride" occurs when a facility needs more space and they move inmates on days other than on the normal move days.  This transfer occurred on Tuesday, July 18, 2017.

37.     At this time it was known by each and every one of the Defendants that Madden was homophobic.

38.     Although knowing that decedent RODRIGUEZ BURKS was homosexual, and that the newly transferred inmate was homophobic, each and

every one of the Defendants made a conscious collective decision to house Madden with the decedent in the same cell.

39.    The same day that Madden was housed with decedent RODRIGUEZ BURKS,  Madden repeatedly told the Defendant Corrections Officers named herein and the prison counselor, Defendant KAREN PURNICK that "If you don't move me out of this cell, I'm gonna hurt this guy." However each of the Defendants named herein ignored the threats and simply left Madden and the decedent RODRIGUEZ BURKS, in the same cell knowing that harm would result to decedent RODRIGUEZ BURKS.

40.    Both Madden and decedent RODRIGUEZ BURKS separately also repeatedly told Defendant PRUNICK that they needed to be moved away from each other for safety reasons but Defendant PRUNICK ignored the requests and stated " This is not the Holiday Inn.  You don't get it your way!"

41.     Madden also wrote Defendant Prunick a kite on the morning before the incident discussing getting out of the cell he was in with decedent RODRIGUEZ BURKS, but Defendant Prunick, although having a conversation with Madden who advised her it was all in the kite, simply ignored the kite.

42.    At morning count on July 20, 2017, decedent RODRIGUEZ BURKS again asked the Defendant Corrections Officers to move him to no avail as they refused all the while knowing that certain harm would befall decedent RODRIGUEZ BURKS, if he was not moved.

43.     That because Defendants, failed to move decedent RODRIGUEZ BURKS from the cell, after morning count, Madden violently and brutally beat, tortured and killed decedent RODRIGUEZ BURKS in their cell.

44.     That decedent, RODRIGUEZ BURKS, suffered 8 lacerations to the left and right eyelids and the left and right eyebrows.  The pathologic Diagnosis was Closed Head Injury, with Subarachnoid Hemorrhage and Cerebral Cortical Contusions and Traumatic Injuries to Bilateral Supraorbital Facial Area.

45.     That although each and every Defendant was aware of the certain threat to decedent RODRIGUEZ BURKS' physical safety,  none of them moved him out of the cell, and none of them performed timely rounds and/or observations of the inmates to check on physical safety.

46.     When Defendant EISEMAN finally went to the decedent's cell in the afternoon, the decedent's body was discovered, and Madden stated to Defendant EISEMAN, "I told you guys to move me."

47.     The Decedent was found under a pile of blankets laying on his bunk face down with blood covering his body and blankets. He had no pulse.

48.     Finally Madden was taken out of the cell he had been in with the decedent and taken to another unit where he was placed in a holding cage while Corrections Officer Dylan Deal videotaped Madden who stated that "they should have never locked me with queer, he will be lucky if he even has a pulse."

Madden also stated at that time "I asked them to move me and something had to be done."

49.     Although Madden was charged with the killing of decedent RODRIGUEZ BURKS, each and every Defendant, herein was the proximate cause of the murder of RODRIGUEZ BURKS as they knew that Madden was going to kill the decedent RODRIGUEZ BURKS even prior to putting him in that cell as he had a lower classification and was homosexual, further each and every Defendant had knowledge that RODRIGUEZ BURKS would be killed when they put him in that cell; when RODRIGUEZ BURKS made pleas to Defendants to be moved; and when Madden specifically told them that he was going to hurt RODRIGUEZ BURKS if he was not moved out of the cell.

50.     For at least 72 hours before the death of decedent RODRIGUEZ BURKS all Defendants knew or should have known of the violent and dangerous propensities of Madden and disregarded that risk to decedent RODRIGUEZ BURKS.

51.     Each and every Defendant knew that Madden was a safety risk to RODRIGUEZ BURKS being a lower security classification and/or homosexual being housed in the same cell as a homophobic prisoner who threatened harm if he was not moved out of the cell.

52.     That although being aware of the risk to RODRIGUEZ BURKS' safety, none of the Defendants took any action to move the threat of the risk by

{00551146.DOCX}

10

separating the decedent and Madden as requested by both decedent RODRIGUEZ BURKS and Madden; by monitoring the interactions of the two inmates; by performing routine and timely cell checks after Madden had threatened to harm him; and by failing to protect decedent RODRIGUEZ BURKS.

53.     That the Defendants had a practice, policy and or procedure in effect which failed to protect inmates of differing sexual orientations and instead inflicted harm and failed to protect inmates, including Rodriguez Burks an such inmates.

54.     Additionally, Defendant supervisors did not provide training to the defendant corrections officers with respect to ensuring the safety of homosexual inmates and/or moving inmates from cells when there are threats to the inmates' safety and well being.

## COUNT I

### DEFENDANTS INDIVIDUAL LIABILITY-DELIBERATE INDIFFERENCE TO THE SAFETY OF DECEDENT, FAILURE TO PROTECT AND CRUEL AND UNUSUAL PUNISHMENT

55.     Plaintiff hereby restates, re-alleges, and incorporates each and every allegation contained in paragraphs above as though fully set forth herein.

56.     42 U.S.C. §1983 provides in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom or usage, of any State subjects or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

57.     The Eighth Amendment to the United States Constitution prohibits

cruel and unusual punishment and obliges prison authorities to provide protection to an inmate when there is a substantial risk of harm to that inmate.

58.   Defendants WARDEN CATHERINE S. BAUMAN, DEPUTY WARDEN ROBERT WICKSTROM, PRISON ADMINISTRATOR DEAN POTILLA, SGT. GERALD MONTICELLO, SUPERVISOR ZACHARY SORRELLE, SUPERVISOR THOMAS SALO, CORRECTIONS SGT. JOHN, SGT. PERRY and PRISON COUNSELOR KAREN PURNICK knew or should have known of Madden's propensity to seriously injure and/or kill decedent RODGRIGUEZ BURKS and failed to protect him from harm.

59.   Defendants WARDEN CATHERINE S. BAUMAN, DEPUTY WARDEN ROBERT WICKSTROM, PRISON ADMINISTRATOR DEAN POTILLA, SGT. GERALD MONTICELLO, SUPERVISOR ZACHARY SORRELLE, SUPERVISOR THOMAS SALO, CORRECTIONS SGT. JOHN, SGT. PERRY and PRISON COUNSELOR KAREN PURNICK knew of the dangerous and violent propensities of Madden and disregarded the risks to decedent RODRIGUEZ BURKS, a known homosexual by assigning and allowing decedent to be placed in the cell with Madden, who had a higher security classification and was a known homophobic.

60.   Defendants' actions in assigning and placing decedent RODRIGUEZ BURKS in the cell with Madden constituted a reckless disregard of the risk of harm sufficient to show deliberate indifference amounting to a violation of the

decedent's civil rights.

61.   Furthermore, the above named defendants had knowledge that harm would in fact occur to decedent RODRIGUEZ BURKS as both he and Madden, specifically told the Defendant officers and others.

62.   Additionally, the decedent RODRIGUEZ BURKS and Madden specifically informed DEFENDANT PURNICK that the decedent's life was in danger while being housed with Madden and that they needed to be moved, and DEFENDANT PURNICK'S response that "This is not the Holiday Inn.  You don't get it your way!" which establishes the callous and deliberately indifferent attitude to the pleas to be moved, to African American inmates and to homosexuals.

63.   That the aforementioned actions constituted a deliberate indifference towards decedent's well-being contravening his Eighth Amendment rights as secured by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. §1983 in that Defendants were deliberately indifferent by ignoring and disregarding obvious signs that decedent would be seriously harmed and killed by his cell mate, and even after the defendants, were repeated told Madden that would harm the decedent, RODRIGUEZ BURKS.

64.   Defendants, EISEMAN, PEER, EXELBY, MONTICELLO, CHRISTOFF, SALO, KURTH, JOHN, SORELLE, BOUGH, PURNICK, KLENITZ, STRICKLAND, KULIK, PERRY, CORY ORDIWAY AND BECKWITH, were all informed and/or had knowledge of Madden's higher

security classification and propensity for violence toward homosexuals and of RODRIGUEZ BURKS, being a homosexual, and disregarded the certainty of serious harm and/or death that would befall RODRIGUEZ BURKS.

65.    That both Madden and RODRIGUEZ BURKS specifically told the defendants identified in paragraph 64, that they needed to be moved and repeatedly pled to be moved within the 72 hours prior to the assault and murder of RODRIGUEZ BURKS. Madden in fact repeatedly stated, "If you don't move me out of this cell, I'm gonna hurt this guy." However each of the Defendants named herein ignored the threats and simply left decedent RODRIGUEZ BURKS in the cell with Madden without any protection, failing to transfer either inmate out of the cell; failing to conduct timely rounds of the cells to check on the inmates knowing there were specific threats of harm to decedent RODRIGUEZ BURKS; and failing to timely respond to the assault and murder of RODRIGUEZ BURKS.

66.    Defendants' actions and inactions constitute a deliberate indifference to decedent's right to remain safe while incarcerated in violation of the Eighth Amendment.

67.    Each of the Defendants' actions constitutes cruel and unusual punishment under the Eighth Amendment.

68.    Defendants' actions and inactions were the proximate cause of Rodriguez Burks' brutal and violent death.

69.     None of the Defendants are entitled to qualified immunity as their actions were not objectively reasonable and the law was clearly established at the time of this incident.

70.     That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

      a.     Death;

      b.     Reasonable medical, hospital, funeral and burial expenses;

      c.     Conscious pain and suffering, physical and emotional;

      d.     Humiliation and / or mortification;

      e.     Mental anguish;

      f.     Economic damages;

      g.     Loss of love, society, and companionship;

      h.     Loss of gifts, gratuities, and other items of economic value;

      i.     Parental guidance, training, and support;

      j.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

      k.     Attorney fees and costs pursuant to 42 USC § 1988;

      l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendants, jointly and severally, and award an

amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT II

## <u>DEFENDANTS LIABILITY IN THEIR OFFICIAL CAPACITIES</u>

71.    Plaintiff hereby restates, re-alleges, and incorporates each and every allegation contained in paragraphs above as though fully set forth herein.

72.     That each and every individual Defendant identified herein had knowledge of each and every factual allegation set forth above, prior to the death of the Plaintiff.

73.    That in the alternative, if any individual Defendant claims that he/she did not have knowledge of each and every factual allegation set forth above, that individual Defendant should have known of each and every factual allegation.

74.    Defendants and each of them had deficient policies, practices, procedures, training and supervision with respect to protecting an inmate from serious harm and from murder by another inmate; with respect to protecting inmates who are homosexual; and with respect to African American inmates.

75.     Defendants knew about the risk of harm to homosexual inmates such as decedent RODRIGUEZ BURKS and of the risk of harm of placing different security level inmates in the same cells and did not have a policy to identify homophobic prisoners and to keep them separate and safe.

76.    Defendants knew that homosexual inmates were at risk for serious harm throughout Alger Correctional Facility and the prison system and had no

procedures and training in place relating to the same intentionally disregarding the risk of harm to inmates by failing to adopt reasonable policies to protect homosexual inmates.

77.     Defendants further had no policies, procedures and training with respect to identifying inmates who need protection and what actions to take if an inmate is in need of protection in order to protect that inmates' constitutional rights.

78.     That lack of such policies, procedures and training was the proximate cause of the serious harm and death that occurred to decedent RODRIGUEZ BURKS.

79.     That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

  a.     Death;

  b.     Reasonable medical, hospital, funeral and burial expenses;

  c.     Conscious pain and suffering, physical and emotional;

  d.     Humiliation and / or mortification;

  e.     Mental anguish;

  f.     Economic damages;

  g.     Loss of love, society, and companionship;

  h.     Loss of gifts, gratuities, and other items of economic value;

i.      Parental guidance, training, and support;

j.      Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

k.      Attorney fees and costs pursuant to 42 USC § 1988;

l.      Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT III

## RACIAL DISCRIMINATION - 42 USC §1981

80.     Plaintiff hereby restates, re-alleges, and incorporates each and every allegation contained in paragraphs above as though fully set forth herein.

81.     42 USC §1981 provides in pertinent part:

"All persons within the jurisdiction of the United States shall have the same right in every State to…and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties…"

82.     The decedent RODRIGUEZ BURKS was a 23 year old homosexual African American male, whom because of his race was placed in a cell with inmate Madden, a homophobic, who had a higher security classification than the decedent, and an obvious threat to the decedent.

83.     That each and every Defendant racially discriminated against the decedent RODRIGUEZ BURKS and violated his right to equal protection of the laws when based on his race, they placed him in a cell with inmate Madden, a homophobic, who had a higher security classification than the decedent, and who was an obvious threat to the decedent.

84.     That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to him and his Estate, including but not limited to the following:

      a.     Death;

      b.     Reasonable medical, hospital, funeral and burial expenses;

      c.     Conscious pain and suffering, physical and emotional;

      d.     Humiliation and / or mortification;

      e.     Mental anguish;

      f.     Economic damages;

      g.     Loss of love, society, and companionship;

      h.     Loss of gifts, gratuities, and other items of economic value;

      i.     Parental guidance, training, and support;

      j.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

      k.     Attorney fees and costs pursuant to 42 USC § 1988;

      l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor and against Defendants, jointly and severally, and award an amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

## COUNT IV

## GROSS NEGLIGENCE OF ALL DEFENDANTS

85.    Plaintiff hereby restates, re-alleges, and incorporates each and every allegation contained in paragraphs above as though fully set forth herein.

86.    Defendants undertook a duty to decedent RODRIGUEZ BURKS while he was housed in their care and custody.

87.    Defendants breached their duties to decedent RODRIGUEZ BURKS by failing to reassign, move, and transfer him from the cell after being informed by both RODRIGUEZ BURKS and Madden that he was going to harm RODRIGUEZ BURKS and that he needed to be moved.

88.    In addition, Defendants breached their duties to decedent RODRIGUEZ BURKS in the following particulars:

a.    Failing to inquire into, including reviewing all related documentation, Madden's  background, including his history and recent events at the facility, when evaluating, assessing him and placing Madden in a cell with decedent RODRIGUEZ BURKS.

b.    Failing to timely and continuously observe, watch, monitor, and/or check on  to ensure the safety of RODRIGUEZ BURKS especially while knowing about the threats of inmate Madden to RODRIGUEZ BURKS' safety;

c.      Failing to advise, warn, and instruct other individuals having caregiving, supervisory, or custodial responsibilities over RODRIGUEZ BURKS  about the threats  and background information of the inmates, and advising that the inmates should be closely and continuously monitored;

d.      Failing to advise, warn, and instruct other individuals having caregiving, supervisory, or custodial responsibilities of the threat to decedent RODRIGUEZ BURKS;

e.      Failing to promulgate, implement, and enforce policies and procedures ensuring open and effective communication of an inmate's history, significant events, and homicidal risks, to subsequent shifts and other services within the jail;

f.      Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or caregiving responsibilities over decedent RODRIGUEZ BURKS to ensure that he  was adequately guarded against;

g.      Failing to properly train and supervise the individuals within the aforementioned facility having custodial and/or caregiving responsibilities over decedent RODRIGUEZ BURKS to ensure that he was timely checked and properly tended to, including training/supervision in the following particulars:

   i.      how to assess and determine if an inmate's safety is at risk  and if an inmate is in need ;

   ii.     how to supervise and monitor an inmate determined to be a threat of harm to other inmates;

89.    That the above described actions and/or inactions violated *MCLA 691.1407* in that they amounted to gross negligence, specifically conduct so reckless as to demonstrate a substantial disregard for whether an injury resulted.

90.     That as the direct and proximate result of the aforementioned conduct and omissions of Defendants, Plaintiff's decedent and the legal heirs of the estate thereof, suffered the injuries and damages as set forth above.

91.     That the above described conduct of the Defendants, as specifically set forth above, was the proximate cause of Plaintiff's Decedent's death and other injuries and damages to his Estate, including but not limited to the following:

    a.     Death;

    b.     Reasonable medical, hospital, funeral and burial expenses;

    c.     Conscious pain and suffering, physical and emotional;

    d.     Humiliation and / or mortification;

    e.     Mental anguish;

    f.     Economic damages;

    g.     Loss of love, society, and companionship;

    h.     Loss of gifts, gratuities, and other items of economic value;

    i.     Parental guidance, training, and support;

    j.     Exemplary, compensatory, and punitive damages allowed under Michigan and federal law;

    k.     Attorney fees and costs pursuant to 42 USC § 1988;

    l.     Any and all other damages otherwise recoverable under federal law and the Michigan Wrongful Death Act, MCL 600.2922, *et seq*.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, jointly and severally, and award an

{00551146.DOCX}

amount in excess of Seventy Five Thousand ($75,000.00) Dollars exclusive of costs, interest, attorney fees, as well as punitive and exemplary damages.

Respectfully submitted,
*FIEGER LAW*

*/s/ Gina U. Puzzuoli*
GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075
(248) 355-5555
g.puzzuoli@fiegerlaw.com

Dated:    May 25, 2018

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEQUITA BURKS, Personal Representative
of the Estate of RODRIGUEZ BURKS, Deceased,

        Plaintiff,           Case No:
                                  Hon:

vs.

WARDEN CATHERINE S. BAUMAN;        **JURY DEMAND**
DEPUTY WARDEN ROBERT WICKSTROM;
PRISON ADMINISTRATOR DEAN POTILLA;
CORRECTIONS OFFICER LEWIS EISEMAN;
CORRECTIONS OFFICER DONALD PEER;
CORRECTIONS OFFICER GREGORY EXELBY;
PRISON COUNSELOR KAREN PRUNICK;
SGT. GERALD MONTICELLO; CORRECTIONS
OFFICER TEDD CHRISTOFF; SUPERVISOR
THOMAS SALO; CORRECTIONS OFFICER
DALE KURTH; CORRECTIONS SGT. JOHN;
SGT. ZACHARY SORELLE; CORRECTIONS OFFICER
BLOUGH; CORRECTIONS OFFICER TERRY KLENITZ;
CORRECTIONS OFFICER CHARLES STRICKLAND;
CORRECTIONS OFFICER KULIK; CORRECTIONS
OFFICER PERRY; SGT. CORY; CORRECTIONS
OFFICER ORDIWAY and CORRECTIONS
OFFICER HEATHER BECKWITH,
Jointly and Severally, Individually and in their Official Capacities

        Defendants.
_____

GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
*FIEGER LAW*
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI  48075
(248) 355-5555
g.puzzuoli@fiegerlaw.com

_____

## <u>DEMAND FOR JURY TRIAL</u>

**NOW COMES** Plaintiff DEQUITA BURKS Personal Representative of the

Estate of RODRIGUEZ BURKS, Deceased, by and through her attorneys,

FIEGER, FIEGER, KENNEY& HARRINGTON, P.C., and hereby demands trial

by jury on all issues so triable.

Respectfully submitted,
*FIEGER LAW*

*/s/ Gina U. Puzzuoli*
GEOFFREY N. FIEGER (P30441)
GINA U. PUZZUOLI (P37992)
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
g.puzzuoli@fiegerlaw.com

Dated:   May 25, 2018