UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

DEQUITA BURKS, as Personal
Representative for the Estate of
RODRIGUEZ BURKS,

    Plaintiff,

v.

LEWIS EISEMAN, et al.,

    Defendants.

_____/

Case No. 2:18-cv-00075

HON. GORDON J. QUIST

## **OPINION**

In 2017, Rodriguez Burks was murdered by his cellmate, DeShawn Madden, at the Alger Correctional Facility. After Burks' tragic murder, Burks' mother, Plaintiff Dequita Burks, the personal representative of Rodriquez Burks' estate, initiated this action against various employees of the Michigan Department of Corrections (MDOC). In the Amended Complaint, Plaintiff asserts four counts against Corrections Officers Lewis Eiseman, Donald Peer, and Gregory Exelby, and Prison Counselor Karen Prunick—(1) Deliberate Indifference to the Safety of Decedent, Failure to Protect and Cruel and Unusual Punishment; (2) Racial Discrimination – 42 U.S.C. § 1981; (3) Sexual Orientation Discrimination – 42 U.S.C. § 1981; and (4) Gross Negligence of All Defendants. (ECF No. 56.) Plaintiff sues Defendants in their individual and official capacities.

Defendants have moved to dismiss Counts 2, 3, and 4, and all claims against Defendants in their official capacities. (ECF No. 57.) The Court held oral argument on Defendants' motion on March 4, 2020. For the reasons stated below, the Court will grant Defendants' motion.

## I. FACTUAL ALLEGATIONS

Burks was African American and homosexual. Beginning in 2016, Burks was incarcerated at the Alger Correctional Facility (LMF). He was a Security Level IV inmate.[1] Plaintiff alleges that Defendants and other inmates at LMF were aware that Burks was homosexual.

On July 18, 2017, Madden, an African American, was transferred to LMF. Madden was a Security Level V inmate. Plaintiff alleges that despite knowing that Madden was homophobic, Defendants made the "collective decision" to put Madden and Burks into the same cell. (ECF No. 56 at PageID.290.) Neither inmate was happy about sharing a cell, and they both complained to Defendant, Karen Prunick, a prison counselor, about the housing arrangement. On one occasion, Madden said, "If you don't move me out of this cell, I'm gonna hurt this guy." (*Id.*) On another occasion, Madden sent a kite to Defendant Prunick in which he wrote that he "was placed in a cell with a (homo) and that's not something I'm into" and that he needed to be moved before they "get into it." (*Id.*) Defendant Prunick ignored the requests and responded: "This is not the Holiday Inn. You don't get it your way!" (*Id.*)

In the morning of July 20, 2017, Burks asked to be moved to a different cell. He was not moved. Shortly thereafter, Madden brutally beat Burks to death.[2] Defendant Donald Peer was in charge of rounds during the relevant time period and failed to verify that Burks was alive and well. Later on July 20, 2017, Burks was found dead in the cell under a pile of blankets. Around the time Burks was found, Madden told Defendant Eiseman, "I told you guys to move me." (*Id.* at

---

[1] The MDOC applies a five-level classification system when assessing the security needs of an inmate. *Mays v. Gorman*, No. 1:11-cv-694, 2013 WL 504234, at *1 (W.D. Mich. Feb. 12, 2013). Level V is the highest security level and is reserved for "most dangerous and unmanageable prisoners." *Jackson v. Stoddard*, No. 1:13-cv-1297, 2014 WL 2862614, at *1 (W.D. Mich. June 24, 2014).

[2] Madden was subsequently convicted of second-degree murder.

PageID.291.) Madden was later recorded saying, "[t]hey should have never locked me with the queer" and, "I asked them to move me and something had to be done." (*Id.* at PageID.292.)

Since the murder, several prisoners have made general complaints that Defendant Prunick and other staff at LMF did not like Burks because he was African American and homosexual. In one interaction with another inmate, Defendant Prunick allegedly referred to an inmate with a racial epithet and to Burks with a homosexual slur.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

Defendants have moved to dismiss the official capacity claims, the race discrimination claim, the sexual orientation discrimination claim, and the gross negligence claim. The Court addresses each argument in turn.

#### A. Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. Defendants argue that they are entitled to sovereign immunity pursuant to the Eleventh Amendment on all official capacity claims. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989). The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 907 (1984). The Eleventh Amendment, however, does not preclude suits against state defendants for prospective injunctive relief. *See Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908). In the instant case, Defendants are state employees and Michigan has not waived its sovereign immunity. Also, Plaintiff is not requesting prospective injunctive relief. Therefore, Plaintiff's claims against Defendants in their official capacities will be dismissed.

#### B. Race and Sexual Orientation Claims

In Counts 2 and 3, Plaintiff seeks to assert race discrimination and sexual orientation discrimination claims pursuant to 42 U.S.C. § 1981. Defendants argue that there is no independent cause of action under 42 U.S.C. § 1981. Section 1981 provides:

4

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court has explained that § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S. Ct. 2586, 2593 (1976). In the instant case, Plaintiff has not alleged any type of racial discrimination in the making or enforcement of a contract. In addition, the plain language of § 1981 establishes that the section is limited to race discrimination. It does not provide a remedy for sexual orientation discrimination. *See Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987) ("A plaintiff states a viable cause of action under Section 1981 or 1982 only by alleging a deprivation of his rights on account of his race, ancestry, or ethnic characteristics."). Therefore, Plaintiff's individual capacity claims pursuant to § 1981 will be dismissed.

Despite labeling the race discrimination and sexual orientation discrimination claims as "Racial Discrimination – 42 USC § 1981" and "Sexual Orientation Discrimination – 42 USC § 1981," Plaintiff addressed these claims in her response brief and at oral argument as if they were equal protection claims under the Fourteenth Amendment and 42 U.S.C. § 1983. But, even if Plaintiff intended to assert these claims under the Fourteenth Amendment, they will be dismissed because Plaintiff did not allege sufficient facts to state a claim for racial or sexual orientation discrimination.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d

291, 312 (6th Cir. 2005). Here, Plaintiff alleges that Burks was discriminated against because of his sexual orientation and race. The Sixth Circuit applies a rational basis test to a sexual orientation discrimination claim and a strict scrutiny test to a race discrimination claim. *See Davis v. Prison Health Services*, 679 F.3d 433, 438 (6th Cir. 2012).

To state a racial discrimination claim, the plaintiff must "allege sufficient facts to show that a state actor intentionally discriminated against him because of membership in a protected class." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quotation marks and citations omitted). In the instant case, Plaintiff fails to allege facts to establish that Defendants discriminated against Burks because on his race. The Amended Complaint contains only two relevant allegations regarding race. First, after Burks' murder, Defendant Prunick referred to another prisoner with a racial epithet. Second, another inmate said that staff at LMF did not like Burks because he was an African American homosexual. These two allegations—standing alone—are insufficient to show that Defendants discriminated against Burks based on his race.

For a sexual orientation discrimination claim, the "plaintiff may demonstrate that the government action lacks a rational basis . . . either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will." *Davis,* 679 F.3d at 438. Plaintiff asserts that the facts in the instant case are similar to the facts in *Davis*. In *Davis*, the plaintiff alleged that the defendants removed him from his public works program because of anti-gay animus. *Id.* In reversing the district court's dismissal, the Sixth Circuit held that the prisoner stated a plausible equal protection claim because several allegations supported a conclusion that the defendants' actions were motivated by anti-gay animus. *Id.* Those factual allegations included that the prisoner's "work crew treated him differently than other inmates, ridiculed and belittled him, and 'ma[d]e a

6

spectacle' of him when they brought him back to the correctional facility after a public-works assignment because of his sexual orientation" and "[the] officers did not want to strip search him because he was homosexual and would make 'under the breath' remarks when selected to do so." *Id.*

There is no similar allegation in the instant case. Instead, Plaintiff offers only conclusory allegations that Defendants "did not like" Burks because he was an African American homosexual. Plaintiff fails to make any specific allegation against Defendants Eiseman, Peer, and Exelby. And although Plaintiff alleges that Defendant Prunick referred to Burks as a homophobic slur after Burks' murder, this after-the-fact comment is not enough to show that Defendants' actions or inactions were motivated by anti-gay animus. Without facts supporting such a claim, Plaintiff's sexual orientation discrimination claim will be dismissed.

### C. Gross Negligence

For her final count, Plaintiff asserts a gross negligence claim. Defendants argue that they are entitled to statutory immunity under Mich. Comp. Laws § 691.1407, the Governmental Immunity from Tort Liability Act (GITLA). That Act grants immunity from certain claims if the following elements are satisfied:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Mich. Comp. Laws § 691.1407(2)

At issue in this case is whether any Defendant's conduct was *the* proximate cause of Burks' death. In *Ray v. Swager*, 903 N.W.2d 366, 501 Mich. 52, 63 (2017), the Michigan Supreme Court explained the test for determining whether a defendant's conduct was the proximate cause of the plaintiff's injuries. The court must first consider "factual causation"—whether the defendant's conduct in fact caused harm to the Plaintiff. *Id.* at 371, 501 Mich. at 64. "Factual causation requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Kroll by Kroll v. DeMorrow*, 936 N.W.2d 828, 828 (Mich. 2020). The court must separately consider "legal causation" or "proximate cause." *Ray*, 903 N.W.2d at 371, 501 Mich. at 63. Legal causation "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* (quoting *Skinner v. Square D Co.*, 516 N.W.2d 475, 445 Mich. 153, 163 (1994)). "[B]ecause proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause." *Id.* at 376, 501 Mich. at 72. And, although there may be more than one proximate cause, the court must determine whether the defendant was *the* proximate cause—"the one most immediate, efficient, and direct cause preceding an injury." *Id.* at 378, 501 Mich. at 76 (quoting *Robinson v. City of Detroit*, 462 Mich. 439, 445, 613 N.W.2d 307, 311 (2000)). The court should not "weigh[] the factual causes but instead assess[] the legal responsibility of the actors involved." *Id.* at 376, 501 Mich. at 71-72.

Applying this test to the allegations in this case, the Court finds that Madden—not Defendants—was the proximate cause of Burks' death. Accepting all of Plaintiff's allegations as true, there is no question that Madden is more "legally responsible" for Burks' death than any Defendant. Although Defendants inaction may have been *a* proximate cause, Madden was "*the* one most immediate, efficient, and direct cause preceding [the] injury."

8

This finding is consistent with other cases involving injuries in prisons. For example, in *Basso v. Mich. Dep't. of Corr.*, No. 2:08-cv-75, 2009 WL 929028 (W.D. Mich. Apr. 3, 2009), the plaintiff, who was a corrections officer, was injured during a prison riot. In dismissing his gross negligence claims against other prison employees, Judge Bell held that "Plaintiff's injuries were most directly and immediately caused by the rioting inmates at the OCF Facility; none of the actions of Defendants can be said to be the 'one most immediate' or 'direct' cause of Plaintiff's injuries." *Id.* at *8. *See also Fletcher v. Mich. Dep't. of Corr.*, No. 09-cv-13904, 2010 WL 1286310, at *7 (E.D. Mich. Mar. 30, 2010) ("It was Plaintiff suffering the assault and battery that directly resulted in his injuries, not any action or inaction by the individual Defendants.").

Furthermore, in the prison-suicide context, courts have held that a prison employee cannot be the proximate cause when an inmate commits suicide because the inmate's act of taking his or her own life is *the* proximate cause. *See, e.g.*, *Cooper v. Washtenaw Cnty.*, 270 Mich. App. 506, 508-09, 715 N.W.2d 908, 909 (2006) ("[T]he one most immediate, efficient, and direct cause of Morton's death was his own conduct," i.e., his suicide while confined in a holding cell); *Bradley v. City of Ferndale*, 148 F. App'x 499, 514 (6th Cir. 2005) ("[I]t is clear that the one most immediate, efficient and direct cause of Bradley's death was his own act of hanging himself"); *Perez v. Oakland Cty.*, No. 271406, 2007 WL 914669, at *3 (Mich. Ct. App. Mar. 27, 2007) (concluding that the proximate cause of the inmate's death was his own act of suicide).

Because the Court concludes that Madden was *the* proximate cause of Burks' death, Defendants are entitled to state immunity on the gross negligence claim. Therefore, Burks' gross negligence claim will be dismissed.

### IV. CONCLUSION

Accordingly, Defendants' motion to dismiss will be **granted**.[3]

A separate order will issue.

Dated: March 13, 2020        /s/ Gordon J. Quist
                               GORDON J. QUIST
                          UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that Plaintiff requests to supplement her allegations in the complaint before the Court rules on Defendants' motion to dismiss. This request was never made by motion. Furthermore, the motion to dismiss has been pending for several months. If Plaintiff wanted to supplement her complaint, she should have done so before the Court rules on the motion to dismiss.